UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:25-CV-00046-GNS

ADAM WOOD,
on behalf of himself and all others similarly situated　　　　　　　　　　PLAINTIFF

v.

NISWI, LLC d/b/a LENDUMO　　　　　　　　　　　　　　　　　　　DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Compel Arbitration and Stay, or in the Alternative to Dismiss under Fed. R. Civ. P. 12(b)(1) (DN 22).  The motion is ripe for adjudication.

## I.　　STATEMENT OF FACTS AND CLAIMS

Plaintiff Adam Wood ("Wood") challenges his loan agreements with Defendant Niswi, LLC d/b/a LendUMo ("LendUMo").  (Def.'s Mot. Compel Arbitration & Stay or Dismiss 3, DN 22; *see* Compl. Ex. 1, DN 1-1 [hereinafter June 2023 Loan Agreement]; Compl. Ex. 2, DN 1-2 [hereinafter Jan. 2024 Loan Agreement]; Compl. Ex. 3, DN 1-3 [hereinafter Mar. 2024 Loan Agreement]).  LendUMo claims to be an arm of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized Indian tribe.  (Def.'s Mot. Compel Arbitration & Stay or Dismiss 1; 1st Am. Compl. ¶ 14, DN 30).  Wood alleges that LendUMo operates a "rent-a-tribe" scheme, defined by Wood as "the business practices of non-tribal payday lenders, including Lendumo, hiding behind the guise of a Native American tribe in order to avoid usury laws by invoking sovereign immunity."  (1st Am. Compl. ¶¶ 3-4).

1

Wood and LendUMo have entered into three loan agreements. The first loan agreement, executed in June 2023, was for $1,200 with an APR of 795%. (June 2023 Loan Agreement 2-3). The next two loan agreements were executed in January and March 2024 (jointly, "2024 Loan Agreements") for $2,300 and $1,650,[1] respectively, each with an APR of 550%. (Jan. 2024 Loan Agreement 3, 5; Mar. 2024 Loan Agreement 2, 4). The language in the June 2023 Loan Agreement varies slightly from the 2024 Loan Agreements, which contain identical provisions. (*See* June 2023 Loan Agreement; Jan. 2024 Loan Agreement; Mar. 2024 Loan Agreement). Each loan agreement contains an arbitration provision. (June 2023 Loan Agreement 15-17; Jan. 2024 Loan Agreement 11-13; Mar. 2024 Loan Agreement 11-13).

Wood brings a class action lawsuit on behalf of himself and all others similarly situated, alleging LendUMo has violated Kentucky state statutes. (1st Am. Compl.). LendUMo moves to compel arbitration and stay the lawsuit, or in the alternative, dismiss for lack of subject matter jurisdiction. (Def.'s Mot. Compel Arbitration & Stay or Dismiss).

## II.    DISCUSSION

"Congress has established an 'emphatic federal policy in favor of arbitral dispute resolution.'" *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 389 (6th Cir. 2018) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011)). "The [Federal Arbitration Act ("FAA")] provides that written agreements to arbitrate controversies arising out of an existing contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

---

[1] LendUMo and Wood each filed a different version of the March 2024 Loan Agreement. Wood's version declares that the amount financed is $1,650, which matches the parties' representations. (Mar. 2024 Loan Agreement 4; Def.'s Mot. Compel Arbitration & Stay or Dismiss 5; 1st Am. Compl. ¶ 13). LendUMo asserts that this is an unsigned version that "appears to include a typo" regarding the date it was signed. (Def.'s Mot. Compel Arbitration & Stay or Dismiss 3 n.1). The version attached by LendUMo recites that the amount financed is $2,300. (Def.'s Mot. Compel Arbitration & Stay or Dismiss Ex. A-3, DN 22-4).

of any contract." *Id.* (internal quotation marks omitted) (quoting *KPMG*, 565 U.S. at 21-22). Section 4 of the FAA provides that a party may petition a court to compel arbitration. 9 U.S.C. § 4. The party resisting arbitration bears the burden of proof, and courts must resolve any doubts in favor of arbitrability. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 472 (2024). The "threshold arbitrability question—that is, whether the[] arbitration agreement applies to the particular dispute" may be delegated to an arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) (citations omitted); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.")).

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc.*, 586 U.S. at 68; *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("[A] valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator.").

### 1. *Agreement to Delegate*

An agreement to delegate the arbitrability determination to an arbitrator, "commonly known as a delegation provision, requires clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021)

3

(internal quotation marks omitted) (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020)). "In effect, this rule reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton*, 962 F.3d at 844 (citation omitted).

In this instance, there is clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability. The June 2023 Loan Agreement provides that the arbitrator will decide "all claims, disputes or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision . . . , the validity and scope of this Provision and any claim or attempt to set aside this Provision." (June 2023 Loan Agreement 15). The 2024 Loan Agreements contain nearly identical language, as well as an explicit delegation clause:

> **DELEGATION CLAUSE.** The arbitrator shall have the power to rule on the arbitrator's own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Provision or to the arbitrability of any dispute, including but not limited to, disputes as to whether this Delegation Clause, the Arbitration Provision or the Agreement as a whole is unconscionable or against public policy.

(Jan. 2024 Loan Agreement 11-12; Mar. 2024 Loan Agreement 11-12). Wood does not contest that the clauses clearly and unmistakably delegate the arbitrability decision. (Pl.'s Resp. Def.'s Mot. Compel Arbitration & Stay or Dismiss 13; *see* Def.'s Reply Mot. Compel Arbitration & Stay or Dismiss 3, DN 32).

### 2.    *Specific Challenge to Delegation Provision*

If a party challenges the validity of a delegation provision, the court "must address those challenges" because "[a]ttacking a delegation provision as invalid turns the question away from arbitrability of gateway issues to the validity of an arbitrator's authority to arbitrate arbitrability. It is circular to permit the arbitrator to address the validity of the arbitrator's authority to arbitrate arbitrability." *Becker*, 39 F.4th at 355 (citation omitted). The party, however, must challenge the

4

enforceability of the delegation provision "specifically." *Id.* at 356 (quoting *Rent-A-Center*, 561 U.S. at 72).

Wood argues that he "specifically challenges the validity of the delegation provision." (Pl.'s Resp. Def.'s Mot. Compel Arbitration & Stay or Dismiss 13-14). "But a party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 885 (6th Cir. 2021). Accordingly, a party must show that "the basis of [the] challenge [is] directed specifically to the [delegation provision]." *Id.* at 886 (alterations in original) (citation omitted). A party fails to make this showing if its challenge to a delegation clause "simply recycle[s] the same arguments that pertain to the enforceability of the agreement as a whole." *Id.* Still, "a party may challenge both the entire agreement and a delegation provision under the same *legal doctrine*." *Id.* at 885.

Wood first claims that the delegation provision "should be unenforceable for the same reasons the arbitration clause is invalid." (Pl.'s Resp. Def.'s Mot. Compel Arbitration & Stay or Dismiss 14). In a similar case also brought by Wood, this Court has held that this argument does not constitute a specific challenge:

> Wood's initial argument is simply that the choice-of-law provision renders the agreement as a whole—and therefore the delegation provision within it—unenforceable. This argument overlaps entirely with the argument that the agreement as a whole is unenforceable, and thus does not "rest, in part, on different factual or legal grounds" than those applicable to the agreement as a whole. *Becker*, 39 F.4th at 356. And Wood's "mere statements" that the delegation provision is invalid for the same reason as the arbitration agreement as a whole does not constitute a specific challenge.

*Wood v. Ascend Loans, LLC*, 821 F. Supp. 3d 821, 829 (W.D. Ky. 2026) (internal citation omitted) (citing *In re StockX*, 19 F.4th at 885).

Wood continues, however, that "the arbitrator would be expressly forbidden from relying on state law, which means that the arbitrator could not ask whether the arbitration clause—and its complete exclusion of state law—would violate public policy against arbitration clauses that 'operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" (Pl.'s Resp. Def.'s Mot. Compel Arbitration & Stay or Dismiss 14 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013))). He made the same argument in *Ascend Loans*, and this Court found that Wood indeed brought a specific challenge to the delegation provision, stating that "Wood therefore attacks the enforceability of the delegation provision using the same legal doctrine he uses against the arbitration agreement as a whole, and he does so by independently applying the doctrine to the delegation provision. This constitutes a specific challenge to the delegation provision." *Ascend Loans*, 821 F. Supp. 3d at 830 (citing *Swiger*, 989 F.3d at 506). Accordingly, Wood specifically challenges the enforceability of the delegation provision.

Wood then argues that the delegation clause is also unenforceable because the interest rate in the Loan Agreements violates Kentucky law. As this Court found in a third case brought by Wood, however, "[a] claim that a contract would be void or voidable due to its subject matter under state law does not sufficiently challenge a delegation provision contained therein." *Wood v. W6LS, Inc.*, No. 4:24-CV-128-DJH, slip op. at 9 (W.D. Ky. Sep. 30, 2025) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006)).

### 3.    *Validity of Delegation Provision*

Finally, the Court considers whether Wood's specific challenge renders the delegation provisions invalid. Wood maintains that the delegation provisions are unenforceable because the Loan Agreements prospectively waive the application of state law, depriving the arbitrator of the benefit of substantive state law when determining the arbitrability of the claims. (Pl.'s Resp. Def.'s

6

Mot. Compel Arbitration & Stay or Dismiss 14).  The prospective-waiver doctrine provides that "in the event the choice-of-forum and choice-of-law clauses [of a contract] operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies," courts should "have little hesitation in condemning the agreement as against public policy." *Mitsubishi Motors*, 473 U.S. at 637 n.19.

In this instance, the Loan Agreements contain nearly identical provisions establishing the governing law.  The June 2023 Loan Agreement provides:

> **GOVERNING LAW**: The laws of the Tribe and applicable federal law will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the Conflict of Laws clause(s) of any state.  You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law and applicable federal law shall exclusively apply to such dispute.

(June 2023 Loan Agreement 9).  The 2024 Loan Agreements provide:

> **GOVERNING LAW:** The laws of the Tribe and applicable federal law will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state.  You agree to be bound by Tribal law and applicable federal law, and in the event of a bona fide dispute between you and us Copies of relevant Tribal law may be obtained by calling 844-388-0500 or by emailing a request to support@ldf-holdings.com.

(Jan. 2024 Loan Agreement 9-10; Mar. 2024 Loan Agreement 9-10).  The arbitration provisions in each Loan Agreement specify that the arbitrator will apply applicable federal law, including the FAA.  (June 2023 Loan Agreement 15 ("The arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA") . . . ."); Jan. 2024 Loan Agreement 12 ("The Arbitrator shall apply applicable substantive law consistent with the laws of the Tribe and applicable federal law, and the Federal Arbitration Act, 9 U.S.C §§ 1-16 ("FAA") . . . ."); Mar. 2024 Loan Agreement 12 (containing identical language to the Jan. 2024 Loan Agreement)).  The 2024 Loan Agreements also provide the governing law for the arbitration provision specifically, stating that "[t]his Arbitration

Provision is governed by applicable substantive law consistent with the laws of the Tribe and applicable federal law, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq." (Jan. 2024 Loan Agreement 11; Mar. 2024 Loan Agreement 11).

In this instance, it is clear that the Loan Agreements allow for the application of federal law—including the FAA—when determining arbitrability.[2] Thus, Wood may raise choice-of-law objections with the arbitrator. *W6LS, Inc.*, No. 4:24-CV-128-DJH, slip op. at 8; *see Dunn v. Glob. Tr. Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *12-14 (11th Cir. Oct. 3, 2024). This Court reached the same conclusion in *Ascend Loans* and *W6LS*. As noted in *Ascend Loans*:

> [In *W6LS*], the same named Plaintiff brought suit against two other loan providers similarly alleging usurious loan practices. [*W6LS, Inc.*, No. 4:24-CV-128-DJH, slip op.] at 1. The loan agreements at issue, like the ones here, contained a provision outlining the law to be used in arbitration as "tribal law and applicable federal law." *Id.* at 2. Wood asserted that this language violated the prospective waiver doctrine, which prohibits arbitration agreements that strip plaintiffs of substantive rights under federal or state law. *See id.* at 7 (citing *Viking River Cruises, Inc. v. Morana*, 596 U.S. 639, 653 n.5 (2022)). And, just as he does here, Wood specifically challenged the enforceability of the delegation provision, maintaining that the choice-of-law clause prevents the arbitrator from "consider[ing] state law when determining arbitrability." *Id.* at 6. In granting the motion to compel arbitration, the Court explained that "Wood's agreements allow for the application of federal law, including the FAA, at the arbitrability stage," which "allow[s] him to raise choice-of-law objections with the arbitrator." *Id.* at 8. In other words, the Court found that the question of whether Kentucky state law applies to the loan agreements is itself a question that the arbitrator must decide. *Id.* at 9. The Court also explained that Wood's "[c]oncern that the choice-of-law clause might bar the enforcement of substantive rights should generally be dealt with at the award-enforcement stage." *Id.* at 7 (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995) and then citing *Mitsubishi Motors*, 473 U.S. at 638). It noted that a "court should find a prospective waiver at the arbitration-enforcement stage only if there is no 'uncertainty' that the 'choice of law would preclude otherwise applicable . . . substantive statutory remedies.'" *Id.* (quoting *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 334 (4th Cir. 2017) (citations omitted)). Because the agreements called for the application of the FAA at the

---

[2] Wood cites *Smith v. Western Sky Financial, LLC*, 168 F. Supp. 3d 778 (E.D. Pa. 2016), in support of his argument, but that out-of-circuit case is easily distinguishable. In that case, any arbitrator would be "in the impossible position of deciding the enforceability of the agreement *without* authority to apply any applicable federal or state law." *Id.* at 786. That is not so here.

arbitrability, it was not obvious that the choice-of-law provision would "preclude" substantive statutory remedies. *Wood v. W6LS, Inc.*, slip op. at 8.

The Court adheres to the reasoning of the aforementioned decision and likewise notes that Wood may raise his choice-of-law objections with the arbitrator. When there is uncertainty as to whether a choice-of-law provision "would preclude otherwise applicable . . . substantive statutory remedies, the arbitrator should determine in the first instance whether the choice of law provision would deprive a party of those remedies." *Dillon*, 856 F.3d at 334 (quoting *Vimar*, 515 U.S. at 540-41). Until the arbitrator has made that decision, the prospective waiver doctrine is not an issue. *See Vimar*, 515 U.S. at 540-41 (finding that plaintiff prematurely challenged the choice-of-law provision because choice of law must "be decided in the first instance by the arbitrator," and only after that decision is made will it be clear if the parties prospectively waived their substantive statutory rights). The Supreme Court came to this same conclusion in [*Mitsubishi Motors*], the case in which the prospective waiver doctrine originated. 473 U.S. at 666 n.19. There, the Court enforced arbitration of federal claims despite the contract containing a choice-of-law clause selecting the laws of the Swiss Confederation. *Id.* While the party opposing arbitration brought a prospective waiver challenge, the Court explained that it would not consider that argument "at this stage in the proceedings, when Mitsubishi seeks to enforce the agreement to arbitrate, not to enforce an award."

*Ascend Loans*, 821 F. Supp. 3d at 830-31 (third, fourth, and fifth alterations in original) (citing

*Mitsubishi Motors*, 473 U.S. at 666 n.19). Accordingly, Wood's prospective waiver argument is

premature.[3] The threshold question of arbitrability "must be decided in the first instance by the

---

[3] In addition to Wood's inability to overcome this timing hurdle, Wood's reliance on *Harris v. W6LS, Inc.*, No. 23-CV-16429, 2024 WL 2319716 (N.D. Ill. May 22, 2024) is misplaced. As this Court explained:

[T]he *Harris* court carefully noted that the "[d]efendants argue[d] only that the prospective waiver doctrine does not apply to substantive state law rights; they ma[d]e no alternative argument that if the Court holds that the doctrine applies to state law, the Court should nevertheless enforce the arbitration agreement." *Id.* at *9. In addition to the fact that *Harris* is an unpublished district-court case, because it did not address the same arguments presented in this case, *Harris* does not decisively support denial of the motion to compel.

*W6LS, Inc.*, No. 4:24-CV-128-DJH, slip op. at 8 (second, third, and fourth alterations in original) (citing *Harris*, 2024 WL 2319716, at *9).

arbitrator," then Wood may seek judicial redress. *Vimar Seguros y Reaseguros*, 515 U.S. at 541; *Mitsubishi Motors*, 473 U.S.at 638; *Dillon*, 856 F.3d at 334 (citations omitted).

The Court therefore does not address Wood's arguments with respect to the enforceability of the arbitration agreements. *Ascend Loans*, 821 F. Supp. 3d at 831; (Pl.'s Resp. Def.'s Mot. Compel Arbitration & Stay or Dismiss 7-13). Moreover, just as in *Ascend*, "Wood argues that individual arbitration should not be compelled because the agreement's class action waiver is invalid, this argument is premised on his argument that 'the arbitration provision is invalid.' Since the Court has not found the arbitration agreement invalid and has instead found that the agreement delegates all questions of arbitrability to the arbitrator, the Court finds that individual arbitration is proper." *Ascend Loans*, 821 F. Supp. 3d at 831 (internal citation omitted). The same conclusion applies here.

Finally, because the Court has determined that arbitration is proper and LendUMo has requested a stay pending arbitration, the Court will order the matter stayed. *See Spizzirri*, 601 U.S. at 478 (requiring district court to stay proceedings when the court "finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration"). Because the Court has granted LendUMo's request to compel arbitration and stay, LendUMo's alternative motion to dismiss will be denied as moot. *Cf. Ross v. Nissan of N. Am., Inc.*, 728 F. Supp. 3d 841, 854 (M.D. Tenn. 2024) ("Because the Motion to Dismiss (Doc. No. 30) argues for the Court to dismiss the claims of all Plaintiffs, but Plaintiff Carpio's claims are now stayed and not subject to dismissal, the Motion to Dismiss is DENIED as moot . . . .").

### III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and Stay, or in the Alternative to Dismiss under Fed. R. Civ. P. 12(b)(1) (DN

22) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.  This matter is **STAYED**

pending arbitration pursuant to 9 U.S.C. § 3.  The Parties are **ORDERED** to submit a joint status

report every **ninety (90) days** and report on the outcome of the arbitration within **twenty (20) days**

of its conclusion.

**Greg N. Stivers, Judge**
**United States District Court**
June 22, 2026

cc:    counsel of record

11